## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: PETER CORRENTE, | : | Chapter 7 |
| | : | 5:09-BK-06494-JJT |
| Debtor. | : | |

| | | |
|---|---|---|
| WILLIAM G. SCHWAB, ESQ., Trustee for Peter Corrente, | : : : | |
| | : | 3:11-CV-02179 |
| Appellant, | : | (JUDGE MARIANI) |
| | : | (APPEAL FROM BANKRUPTCY COURT) |
| v. | : : | |
| LPS FIELD SERVICES, INC., | : | FILED |
| | : | SCRANTON |
| Appellee. | : | NOV 2 0 2014 |

PER _____

DEPUTY CLERK

### MEMORANDUM OPINION

### I.    Introduction

This case comes before the Court on appeal from an Order entered by Bankruptcy Judge John Thomas on October 13, 2011. In that Order, the Bankruptcy Court granted Motions to Dismiss with leave to amend filed by Appellee LPS Field Services, Inc. and former Appellee GMAC Mortgage, LLC, and denied a Cross-Motion for Partial Summary Judgment filed by Appellant William Schwab as trustee for debtor Peter Corrente. (*See* Bankr. Op., Oct. 13, 2011, Doc. 2, Ex. 7, at 3-4.) The trustee now appeals on the grounds that (1) the Bankruptcy Court's dismissal of its Complaint violated the law of the case and (2) the Bankruptcy Court should have granted summary judgment on Plaintiff's claim for a

violation of the automatic stay. (*See* Appellant's Br., Doc. 4, at 2.)  For the reasons that follow, the Court will deny the appeal and affirm the Bankruptcy Court's decision.

## II.   Factual Background

On August 23, 2009, Debtor Peter Corrente filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. (*See* Compl., Doc. 2, Ex. 1, at ¶ 1.) Attorney William Schwab was appointed as Trustee to administer the Bankruptcy Estate and, in that capacity, filed a Complaint in tort in the United States Bankruptcy Court for the Middle District of Pennsylvania against GMAC Mortgage, LLC and LPS Field Services, Inc. (*See id.* at ¶ 2.) The Complaint alleges the following facts, all of which are alleged to have occurred while the Estate was subject to the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, (*see id.* at ¶¶ 37-40), which stays, among other things "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," (*id.* at ¶ 39 (citing 11 U.S.C. § 362(a)(3))).

The Complaint arises from a series of confusions related to two adjacent lots of land located in Carbon County, Pennsylvania. (*See generally* Compl. at ¶¶ 15-17; *see also* Bankr. Op., Doc. 2, Ex. 7, at 1-2 (summarizing factual background).)  Briefly, Debtor Peter Corrente owned Lot 1505. (Compl. at ¶ 17.)  However, Corrente built his house on the adjacent Lot 1503, which was owned at all relevant times by non-party Falcon Crest Homes, Inc. (*Id.* at ¶¶ 15-16.)  Apparently during the entire period of Corrente's ownership, Lot 1505 was vacant. (*Id.* at ¶¶ 18, 20.)

2

Corrente secured the purchase of his home by a mortgage through former Defendant GMAC Mortgage, LLC. But that mortgage only encumbered vacant Lot 1505 (the lot he actually owned), not Lot 1503 (the lot he physically inhabited). (*See id.* at ¶¶ 15-20.) Nonetheless, on February 9, 2010—i.e., after Corrente filed for bankruptcy—GMAC commenced foreclosure proceedings against Corrente's residence, (*id.* at ¶ 18), having received an Order granting it relief from the automatic stay of all proceedings under the Bankruptcy Code and allowing it to foreclose on its mortgage, (*id.* at ¶ 11). The relief from stay only applied to the property for which GMAC held a mortgage interest: that is, the vacant Lot 1505. (*See id.*)

The Trustee then alleges that GMAC hired and directed its agent Appellee LPS Field Services to break and enter the residence located on Lot 1503 in order to "winterize" it, even though only Lot 1505 was covered by the relief from stay. (*Id.* at ¶¶ 22, 25, 40.) To the Trustee's information and belief, LPS "winterized the residential structure by connecting wiring to the pipes or through some other mechanism to winterize the property." (*Id.* at ¶ 23.) This was done in such a negligent manner as to cause a fire which caused an alleged $15,209.00 in damages on or about October 25, 2010. (*Id.* at ¶¶ 24, 30.) The basis of the Trustee's belief that LPS's winterization caused the fire appears only to be that "[u]pon a visual inspection of the fire damages [to the] residential structure, stickers were located throughout the residential structure indicating that LPS Field Services was the entity that winterized the said property." (*Id.* at ¶ 26.)

3

The fire caused problems for the Trust based on the pendency of certain other legal proceedings. On January 11, 2010, Falcon Crest Homes had filed an action against Corrente and the Trustee, also before Judge Thomas in the Middle District Bankruptcy Court, seeking a declaratory judgment that Falcon Crest is the true owner of Lot 1503 and that Corrente and the Trust have no rights to the property, and further requesting that the Court direct the Trustee to either remove or abandon Corrente's misplaced structure. (See Compl., *Falcon Crest Homes, Inc. v. Corrente*, 5:10-AP-00009-JJT, Doc. 2, Ex. 9, at p. 4.) On May 25, 2010, however, Falcon Crest and the Trustee agreed to settle their case. (See Stipulation of Settlement, Doc. 2, Ex. 10, at 1.) As part of the settlement, the Trust agreed to sell Falcon Crest the residence located on Falcon Crest's own Lot 1503 for a total of $45,000. (See id., Ex. A, at ¶¶ 1-2.) The Bankruptcy Court approved both the settlement and the sale of the property from the Estate to Falcon Crest on October 22—a mere three days before LPS allegedly caused the fire on that property. (See Order, Oct. 22, 2010, Doc. 2, Ex. 20, at 1 (settlement approval); Order, Oct. 22, 2010, Doc. 2, Ex. 21, at 2 (sale approval).)

As a result of the fire damage, the Trust claims that it suffered harm in its dealing with Falcon Crest. (Compl. at ¶¶ 30-34.) For one, it incurred the $15,209.00 in damages to the structure mentioned above. But it also incurred "additional attorney's fees in at least $2,395.00 as of the date of this Complaint, and costs to the estate to rectify damages to the residential structure in order to minimize any loss to the estate and to proceed with the

4

Court approved sale to Falcon Crest Homes, Inc.," (*id.* at ¶ 34), as well as a loss of proceeds to unsecured creditors in the amount of at least $3,000.00, (*id.* at ¶ 41). The Trustee therefore filed a Complaint against GMAC and LPS, alleging claims against both Defendants for a violation of the automatic stay pursuant to 11 U.S.C. § 362(k) (Count I), conversion (Count II), and tortious interference with contractual relations (Count III).

## III.    **Procedural History**

GMAC and LPS both filed Motions to Dismiss the Plaintiff's Complaint for failure to state a claim. (*See* Def. GMAC Mortg.'s Mot. to Dismiss, Doc. 2, Ex. 2; Def. LPS Field Servs.' Mot. to Dismiss, Doc. 2, Ex. 5.) In response, the Trustee filed a Motion for Partial Summary Judgment, on the grounds that the Defendants had violated the automatic stay on Lot 1503. (*See* Pl.'s Br. in Opp. to GMAC's Mot. to Dismiss and Br. in Supp. of Mot. for Partial Summ. J., Doc. 2, Ex. 4, at 10-14.) In a short Opinion, the Bankruptcy Court granted the Defendants' Motions to Dismiss and denied the Plaintiff's Motion for Partial Summary Judgment. (*See* Bankr. Op., Doc. 2, Ex. 7, at 3-4.)

The crux of the Bankruptcy Court's Opinion was that the Complaint did not adequately allege that the Estate had an ownership right in the structure affixed to Falcon Crest's Lot 1503. It stated:

> Taking the facts in a light most favorable to the Plaintiff/Trustee, I can only conclude that attaching this structure to the real estate of another negates the argument that it is still owned by Peter Corrente and, thus, his Trustee. Items permanently attached to realty become part of the realty and thus would belong to the owner of the realty, in this case, Falcon Crest.

5

(*Id.* at 2-3.) Thus, the Court concluded that, while Corrente and the Trustee might "have a cause of action against others, including Falcon Crest, . . . it is that cause of action which appears to be the property of the estate, not the house itself." (*Id.* at 3.) Accordingly, the Plaintiff lacked standing to assert damage to third-party Falcon Crest's property:

> I cannot discern from the Complaint how the Defendants [*sic*] actions [in breaking and entering the house on Lot 1503] may have affected the rights of the Trustee. . . . All I could discern from the Complaint is that a structure on the property of Falcon Crest may have been entered and/or damaged by the Defendants. The Trustee claims to own the structure on Lot 1503 while conceding that Lot 1503 is owned by Falcon Home, Inc. In the absence of a plausible allegation that the Trustee was, *in fact*, the owner of the structure on the Falcon Crest lot, I simply cannot ascertain in what manner the Trustee's cause of action against others was interfered with and/or damaged by the Defendants [*sic*] purported actions. At the very least, the pleadings should contain a logical explanation as to how a residential structure built on the real estate of a non debtor is included as property of the estate.

(*Id.* at 3 (internal citations omitted).) The accompanying Order specified, however, that the Plaintiff was given leave to amend the deficiencies in his Complaint. (*See* Order, Oct. 13, 2011, Doc. 2, Ex. 8.)

Plaintiff did not file an amended complaint, but instead appealed to this Court. In so doing, he asserts two purported errors in the Bankruptcy Court's Opinion. First, he argues that the Bankruptcy Court erred in granting Defendants' Motions to Dismiss on the basis of "its belief that the Residential Structure was not the property of the estate, yet had earlier granted the Trustee the authority to sell the Structure as property of the estate for the sum of $45,000." (Doc. 4 at 12.) Second, he argues that the "Bankruptcy Court erred in denying the Trustee's Cross-Motion for Partial Summary Judgment when the automatic stay

provision of 11 U.S.C. § 362 remained in effect as to the proceeds derived from the Structure up to and until the date it was transferred to Falcon Crest Homes." (*Id.* at 17.)

While this appeal was pending, Defendant/Appellee GMAC, through its affiliated company Residential Capital, LLC, also filed for Chapter 11 bankruptcy. (*See* Pl.'s Mot. to Sever Def. GMAC, Doc. 12, at ¶¶ 37-38.)  Concerned about the delay that the automatic stay provision of GMAC's bankruptcy was causing in the instant appeal, Plaintiff filed a Motion to Sever on July 29, 2014. (*See id.* at ¶¶ 39-42.)  The Court granted that Motion on November 4, 2014. (*See* Order, Nov. 4, 2014, Doc. 17, at 2.)  Accordingly, Appellee LPS is now the only Defendant in this action.  The Court proceeds to analyze the merits of this appeal only against LPS.

## IV.  Standard of Review

### a.  Appellate Jurisdiction

The district courts of the United States have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the United States Bankruptcy Court, as well as from certain interlocutory orders of the Bankruptcy Court not applicable here.  28 U.S.C. § 158(a).  The district court reviews "the Bankruptcy Court's findings of fact for clear error and exercise[s] plenary review over questions of law." *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 573 (3d Cir. 2007).  Because the Bankruptcy Court's disposition of a Motion to Dismiss and Motion for Summary Judgment is purely a question of law that does not rely on any finding of fact, this Court will review its decision under a plenary standard.

Cf. Am. Flint Glass Workers' Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).

### b. Motion to Dismiss

In determining whether the Bankruptcy Court was correct to grant Defendants' Motions to Dismiss, we note that a complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."

8

*Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### c. Motion for Summary Judgment

The Court applies a different standard to the denial of Plaintiff's Motion for Summary Judgment. Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue

9

as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 265 (1986). Once such a showing has been made, the nonmoving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). Nonetheless, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat summary judgment]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## V.    Analysis

### a. Estate Property and the Law of the Case

The Trustee first argues that the Bankruptcy Court's decision violates the "law of the case" doctrine. (Doc. 4 at 13.) "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983). However, the doctrine only applies to "those legal issues that the court . . . actually decided, either expressly or by implication." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998). Moreover, "[t]he

10

doctrine only applies within the same case—an identical issue decided in a separate action does not qualify as law of the case." *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010). But the doctrine does not "preclude our reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *City of Phila.*, 158 F.3d at 718.

Here, we find that the Bankruptcy Court's Order of October 22, 2010 approving the sale of the property on Lot 1503 from the Estate to Falcon Crest does constitute the law of the case. Despite Defendant's arguments that it was part of a wholly separate case, it was filed in the consolidated bankruptcy case, *In re Peter Corrente*, No. 5:09-CV-06494, which was captioned as being against, *inter alia*, then-Defendant GMAC Mortgage. (*See* Doc. 2, Ex. 21, at 1.) GMAC had an opportunity to object to the sale, and did indeed object to it. (*See generally* GMAC's Obj. to Tr.'s Mot. to Sell Property of the Estate, Doc. 2, Ex. 15.) The fact that LPS—the only defendant remaining in the instant case—was not a defendant at the time is irrelevant as to the application of the law of the case doctrine, because defendants can be added and dropped throughout the course of a case. The salient fact is simply that the Order granting the sale of property was a part of the bankruptcy case under which all of the individual adversary proceedings were brought, and therefore constitutes the law for all of them.

Moreover, the Order granting the sale of Estate property is clearly an "actual decision." It was an Order filed after Motion, notice to creditors, and extensive briefing. (*See generally* Doc 2, Exs. 13-19.) It is phrased in the form of an Order and specifically enumerates in what manner the sale shall proceed. (*See* Doc. 2, Ex. 21, at 1-2.) Thus, it is clear that the Bankruptcy Court actually decided that the Estate had the right to sell the structure located on Lot 1503. And if the Bankruptcy Court decided that the Estate had the right to sell the structure, then it logically follows that it must have also decided that the Estate had an ownership interest in that structure sufficient to make it its own property.

If this were the end of the matter, then the Court might look favorably on Plaintiff's appeal and hold that the Bankruptcy Court's decision dismissing his Complaint against GMAC and LPS did indeed violate the law of the case. However, it is not the end of the matter, because the Order appealed from cannot be construed as inconsistent with the issues previously decided. The Order dismissing the Complaint only arose under Rule 12(b)(6) and must therefore be viewed under the standards governing a Motion to Dismiss enumerated in the previous section. In ruling on a Motion to Dismiss, the Court does not make substantive decisions of fact, but only decides whether the Complaint as written pleads enough facts to state a cause of action. *Cf. In re Integrated Health Services, Inc.*, 358 B.R. 637, 641 (D. Del. 2007) (concluding that "[t]he effects of the decisions on the Motions to Dismiss cannot . . . constitute the law of the case" because under a motion to dismiss a court is "required to accept all factual assertions" and not make its own findings of

fact). And here the Bankruptcy Court only found that Plaintiff's Complaint alleged insufficient facts to show that the structure on Lot 1503 actually belonged to the Estate. This does not mean that the Court found that Plaintiff *could not* demonstrate that the structure belonged to the Estate, or even that the Court did not have reason to believe, based on knowledge of the case outside the pleadings, that the structure did in fact belong to the Estate. It only means that the Complaint as written did not adequately allege ownership of the structure sufficient to survive a 12(b)(6) motion under the standards laid out in *Twombly* and *Iqbal*.

In this regard, it is significant that the Bankruptcy Court allowed Plaintiff leave to amend his Complaint. (*See* Doc. 2, Ex. 8, at 1.) Had Plaintiff decided to amend his Complaint instead of appealing, he could have simply added more facts sufficient to state a claim under 12(b)(6), e.g., that a court-approved settlement agreement and authorization to sell the property on Lot 1503 gave the Estate an ownership interest in that property—facts which may indeed have been sufficient to survive a subsequent Motion to Dismiss. Because Plaintiff still had an opportunity to cure these pleading deficiencies, the Court cannot conclude that the Bankruptcy Court's decided anything inconsistent with the law of the case. Accordingly, the Bankruptcy Court's decision dismissing the Complaint is affirmed and the matter is remanded to the Bankruptcy Court so that Plaintiff can file an amended complaint, if he so chooses.

### b. Violation of the Automatic Stay

Next, Appellant argues that the Bankruptcy Court should have granted his Motion for

Partial Summary Judgment on the basis that the Appellee violated the automatic stay.

(Doc. 4 at 17.)  The Bankruptcy Code provides that "an individual injured by any willful

violation of a stay . . . shall recover actual damages, including costs and attorneys' fees,

and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).

"The bankruptcy courts have construed 'willful' as used in the code to mean an intentional or

deliberate act done with knowledge that the act is in violation of the stay."  *In re Atl. Bus. &*

*Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990).  Thus, damages for willful violations are

appropriate

> upon a finding that the defendant knew of the automatic stay and that the
> defendant's actions which violated the stay were intentional.  Whether the
> party believes in good faith that it had a right to the property is not relevant to
> whether the act was "willful" or whether compensation must be awarded.

*Id.* (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989)).

In order to evaluate Appellant's argument, we must keep in mind the standards for

Motions for Summary Judgment, discussed above, in which the Court looks beyond the

pleadings and determines whether the evidence of record is sufficient to justify judgment in

the moving party's favor.  At the time that the Motions came before the Bankruptcy Court,

the primary source of evidence was a Complaint filed by the Plaintiff that alleged that GMAC

and LPS broke and entered a residential structure on a lot owned by nonparty Falcon Crest

Homes and caused fire damage.  The only record evidence beyond this was in the form of

14

documents that testify to the existence of a mortgage, to Corrente's interest in the structure on Lot 1503, and to the settlement agreement between the Trustee and Falcon Crest.  (*See* Tr.'s Resp. in Op. to GMAC Mortg.'s Mot. to Dismiss and Tr.'s Mot. for Partial Summ. J., Doc. 2, Ex. 3, at pp. 6-46.)  But even if the Bankruptcy Court were to accept these documents as true and accurate, they leave unresolved the basic questions of whether LPS actually broke and entered Corrente's residence on Lot 1503 as alleged, and if so, whether those actions were done despite knowledge that a stay existed.[1]  These are facts which, at the time of appeal, had only been alleged in the Complaint and discussed in the context of a Motion to Dismiss, and which had never been admitted.  "Facts" which have only been alleged in the Complaint are insufficient by themselves to elicit a favorable judgment.  *Cf. First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S. Ct. 1575, 1593, 20 L. Ed. 2d 569 (1968) (holding that mere allegations in a complaint are insufficient to survive an adverse motion for summary judgment).  In order to succeed on a Motion for Summary Judgment, the Plaintiff has the burden of producing sufficient evidence to show that, even viewing the evidence in the light most favorable to the nonmoving party, judgment is warranted in his favor.  When Plaintiff has not even produced evidence beyond the most

---

[1] For this reason, the Court need not determine the significance of the fact that the relief from stay Order purportedly only referred to Lot 1505.  Even if the Order did not cover Lot 1503 as well—a fact which the Court does not decide—summary judgment would still be inappropriate because there remains a dispute of fact as to whether LPS willfully violated the stay by breaking and entering the property.

15

basic *ipse dixit* that the actions alleged in the Complaint actually occurred, summary judgment is plainly inappropriate. [2]

Accordingly, the Bankruptcy Court was correct to deny Plaintiff's Motion for Summary Judgment. Its decision is therefore affirmed on this matter as well.

## VI.   Conclusion

For the reasons discussed above, Plaintiff's Appeal is **DENIED**. The Bankruptcy Court's decision of October 13, 2011 is **AFFIRMED**.

Robert D. Mariani
United States District Judge

---

[2] Moreover, summary judgment is inappropriate even putting aside the question of whether the Estate suffered any injury from the fire. There have been no allegations that the purchase price of $45,000 stipulated in the Falcon Crest settlement agreement was at all reduced by the fire. Indeed, documents that the Trustee himself submitted to the appellate record show that on December 10, 2010 Falcon Crest did indeed purchase the property for $45,000. (*See* Report of Private Sale, Doc. 2, Ex. 22, at 1.) This makes a claim that the Estate actually suffered damage giving rise to a lawsuit exceedingly less plausible. However, such records do not appear to have been placed before the Bankruptcy Court in the course of litigating the various motions appealed from, and therefore are beyond the scope of the decision under review.